**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| HRF TRADE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-1019 (RBW) |
| | ) | |
| AKIMAT OF ATYRAU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

The plaintiff, HRF Trade Inc., brings this civil action against the defendant, Akimat of

Atyrau, "assert[ing] [a] claim for the required just compensation upon the confiscation overseas

of the assets invested by [the plaintiff] in Kazakhstan, in violation of [ ] international law[.]"

Complaint ("Compl.") at 1, ECF No. 1. In its Complaint, the plaintiff asserts that this Court has

personal jurisdiction to hear its claims against the defendant pursuant to the Foreign Sovereign

Immunities Act ("FSIA"), 28 U.S.C. § 1330. See id. ¶ 3. However, because the record in this

case did not reflect any notification that the defendant had been properly served pursuant to

Federal Rule of Civil Procedure 4, the Court ordered the plaintiff to "either submit proof that the

defendant ha[d] been properly served or submit to the Court a statement showing good cause for

its delay in serving the defendant and its estimation of when proper service upon the defendant

w[ould] be achieved." Order at 1 (Nov. 30, 2017), ECF No. 4; see also Order at 1 (Jan. 4, 2018),

ECF No. 6; Order at 1 (Feb. 15, 2018), ECF No. 8; Order at 1 (Jan. 10, 2022), ECF No. 10. The

plaintiff has since filed multiple submissions responding to the Court's Show Cause Orders.

Upon careful consideration of the plaintiff's submissions,[1] the Court concludes for the following reasons that the plaintiff has properly served the defendant pursuant to the FSIA.

## I.     BACKGROUND

The plaintiff filed its Complaint on May 29, 2017, alleging "claims arising from the confiscation of American investments overseas without just compensation on fair market terms and related causes of action."  Compl. at 1.  On November 30, 2017, the Court issued an Order stating that "[t]he record reflects no further action taken by the plaintiff in this case, including the absence of any notification that the defendant has been properly served with a summons and the Complaint."  Order at 1 (Nov. 30, 2017).  Accordingly, the Court ordered "that on or before December 14, 2017, the plaintiff must either submit proof that the defendant has been properly served or submit to the Court a statement showing good cause for its delay in serving the defendant and its estimation of when proper service upon the defendant will be achieved."  Id.

The plaintiff filed a timely response on December 14, 2017, in which it stated that "Kazakhstan recently became a party to [T]he Hague Convention on Service Abroad of Judicial and [Extra-Judicial] Documents in Civil [or] Commercial [Matters] [('Hague Service Convention')].  Namely, it signed the [Hague Service] Convention on October 15, 2015, and that Convention entered in[to] force on June 1, 2016."  Pl.'s Dec. 14, 2017 Resp. at 2.  However, the plaintiff noted that "a proper designation of the Central Authority ha[d] not yet been official[ly] published[,]" and as "the Ministry of Justice has many offices and addresses in Kazakhstan," the plaintiff's summons and Complaint "may end up on the wrong desk . . . and not [be] processed at

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Response to Court Order of November 30, 2017 ("Pl.'s Dec. 14, 2017 Resp."), ECF No. 5; (2) the Plaintiff's Response to Court Order of January 4, 2018 ("Pl.'s Jan. 16, 2018 Resp."), ECF No. 7; (3) the Plaintiff's Response to Court Order of February 15, 2018 ("Pl.'s Feb. 22, 2018 Resp."), ECF No. 9; and (4) the Plaintiff's Response to Order to Show Cause ("Pl.'s Feb. 8, 2022 Resp."), ECF No. 11.

all[.]" Id. at 3.  Nonetheless, the plaintiff contends that the summons and Complaint had been

"sent to the agents in Kazakhstan, to effect service one way or another" and assured the Court

that it was "diligently working on the issue of service of process in the Republic of Kazakhstan

and w[ould] report . . . on the status of service once new information bec[a]me[] available[.]" Id.

at 4.

On January 4, 2018, the Court issued a second Order directing the plaintiff to advise the

Court

> (1) whether there exists any special arrangement for service of process between the
> plaintiff and the defendant under 28 U.S.C. § 1608(a)(1), and if so, whether the
> plaintiff has made any attempt to effect service pursuant to that arrangement; [and]
> (2) [to describe] the specific efforts the plaintiff has made to determine the office
> in Kazakhstan designated to receive service of process under the Hague Service
> Convention, as well as what efforts, if any, the plaintiff is currently making or
> intends to make to identify such office[.]

Order at 4 (Jan. 4, 2018).  On January 16, 2018, the plaintiff filed a timely response to the

Court's January 4, 2018 Order, in which the plaintiff stated that it "made inquiries with the

various offices of the Ministry of Justice of Kazakhstan," Pl.'s Jan. 16, 2018 Resp. at 2, but that

"none of those inquiries led to a confirmation [of] . . . which other offices actually serve as the

Central Authority under the Hague Service Convention[,]" id. at 3.  The plaintiff then alleged

that its agents were able to determine that "the President of Kazakhstan had issued an instruction

designating . . . the Department of Supporting Court Operations by the Supreme Court of

Kazakhstan [('Department of Supporting Court Operations')] . . . as the Central Authority[,]" id.,

and stated that the appropriate pleadings were "directed to [that] Department" on January 10,

2018, id. at 4.

On February 15, 2018, the Court issued a third Order requesting that the plaintiff indicate

"whether there exists any special arrangement for service of process between the plaintiff and the

defendant under 28 U.S.C. § 1608(a)(1), and if so, whether the plaintiff ha[d] made any attempt

to effect service pursuant to that arrangement." Order at 2 (Feb. 15, 2018). The plaintiff filed a

timely response on February 22, 2018, wherein it represented that it found "the Department of

Supporting Court Operations . . . had been designated as the Central Authority under [the Hague

Service Convention]" and that "[t]he address of that Department is 39 D. Kunaeva Street,

Astana, Kazakhstan." Pl.'s Feb. 22, 2018 Resp. at 2. The plaintiff claimed that its agents "had

telephonic inquiries, provided oral information[,] and obtained [ ] confirmation that [a service]

request under the Hague Service Convention[] would be processed and would be correctly sent

to that address[,]" which the plaintiff alleged "could be equated to [a] special arrangement[]" for

service of process under 28 U.S.C. § 1608(a)(1). Id. at 3. Furthermore, the plaintiff represented

that it sent the Complaint and summons, along "with the request under the Hague Service

Convention[,]" to the Department of Supporting Court Operations. Id. Finally, the plaintiff's

counsel represented that he had spoken to "one of the deputy clerks of the Supreme Court [of

Kazakhstan]" on February 16, 2018, id. at 3–4, to confirm that "the special arrangement reached

by the local agents of [the plaintiff] was in fact correct[,]" id. at 4.

On January 10, 2022, the Court issued a fourth Order directing the plaintiff to "show

cause" as to "why its current efforts [we]re not adequate[,]" and "why the Court should grant it

an extension to perfect service[,]" "specifically explain[ing] (1) whether the plaintiff has

successfully served the defendant under the procedures established by the Hague [Service]

Convention; [and] (2) the discrepancy between the listed Central Authority and the one identified

by the plaintiff[.]" Order at 7 (Jan. 10, 2022). On February 8, 2022, the plaintiff filed a timely

response, wherein it described its attempt to effectuate service "through the Central Authority of

Kazakhstan . . . in 2017 and 2018." Pl.'s Feb. 8, 2022 Resp. at 5. However, the plaintiff alleged

that because Kazakhstan's Central Authority did not serve the defendant, the plaintiff could serve

"the lawsuit documents directly on the defendant," id., "under the laws of the Republic of

Kazakhstan," id., "which was accomplished on June 22, 2020[,]" id., by personal service, see id.

at 6.  The plaintiff documented proof of personal service with an affidavit from Ludmila

Alekseevna Rybina, a "juridical consultant[] of . . . the Republic of Kazakhstan[,]" id. at 1, and a

one-page document signed by an "Agent for service" that lists three documents that were

provided to the agent: (1) "[t]he Complaint in English," (2) the Complaint "[t]ranslat[ed] into

Russian," and (3) the "[r]equest under the Hague Convention on Service Abroad of Judicial and

Extrajudicial Documents."  Id., Exhibit ("Ex.") 1 (Affidavit ("Rybina Affidavit")) at 7, ECF No.

11-1.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 4(j)(1), "[a] foreign state or its political

subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608 [i.e.,

the Foreign Sovereign Immunities Act]."  Fed. R. Civ. P. 4(j)(1).  "[T]he FSIA provides the sole

basis for obtaining jurisdiction over a foreign state [or political subdivision of a foreign state] in

the courts of this country[.]"  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S.

428, 443 (1989).[2]  To establish personal jurisdiction under the FSIA, a plaintiff must, inter alia,

serve the defendant in accordance with the procedures set forth in the statute, see 28 U.S.C.

§ 1330(b); see also id. § 1608, and "strict adherence to the terms of [28 U.S.C. §] 1608(a) is

required[,]" Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 154 (D.C. Cir. 1994).

"The plaintiff bears the burden of proving that [it] has effected proper service[,]" Jouanny

v. Embassy of France in the United States, 220 F. Supp. 3d 34, 37 (D.D.C. 2016), by

---

[2] The FSIA defines a "foreign state" as "includ[ing] a political subdivision of a foreign state[.]"  28 U.S.C.
§ 1603(a).

"demonstrat[ing] that the procedure employed satisfied the requirements of the relevant portions

of Rule 4[,]" Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotation marks

omitted).  Furthermore, "unless the procedural requirements for effective service of process are

satisfied, a court lacks authority to exercise personal jurisdiction over the defendant."  Candido

v. District of Columbia, 242 F.R.D. 151, 160 (D.D.C. 2007).  Accordingly, "[f]ailure [to effect

proper] service is a jurisdictional defect which is fatal[,]" and is grounds for dismissal.  Tom

Sawyer Prods., Inc. v. Progressive Partners Achieving Sols., Inc., 550 F. Supp. 2d 23, 26 (D.D.C.

2008); see also TIG Ins. Co. v. 2200 M St., LLC, 216 F.R.D. 2, 3 (D.D.C. 2003) ("If the plaintiff

fails either to effect service within the specified time or to show good cause for failing to effect

service, the court may dismiss the action without prejudice.").

### III.     ANALYSIS

The plaintiff argues that its "efforts to serve [the d]efendant in Kazakhstan have been

sufficient to conclude that service has actually taken place."  Pl.'s Feb. 8, 2022 Resp. at 10.

Specifically, the plaintiff claims that it attempted to serve the defendant under 28 U.S.C. §

1608(a)(1) by special arrangement, see Pl.'s Feb. 22, 2018 Resp. at 4 ("[The plaintiff] and its

undersigned counsel believe that the maximum [of] what could be done under all these

circumstances, was done, in full compliance with the statutory requirements of 28 U.S.C.

§ 1608(a)(1)[.]"), and under 28 U.S.C. § 1608(a)(2) by dispatching its pleadings to Kazakhstan's

Central Authority, in compliance with the Hague Service Convention, see Pl.'s Jan. 16, 2018

Resp. at 5 ("[The plaintiff] states and confirms that on January 10, 2018[,] the Hague Service

Convention package was dispatched to Kazakhstan's Central Authority, recently identified as the

Department of Supporting Court Operations by the Supreme Court of Kazakhstan[.]").

However, the plaintiff alleges that neither of those service methods were successful, and thus, it

"was in a position to proceed [by serving the] . . . documents directly on the defendant, which

was accomplished on June 22, 2020." Pl.'s Feb. 8, 2022 Resp. at 5. In the alternative, the

plaintiff claims that "[a]s a way of last resort, th[e] Court . . . may allow service of [the

d]efendant in Kazakhstan [ ] by sending electronic copies in PDF to [the defendant's] email[.]"

Id. at 10.

The Court must first address whether the plaintiff has effected proper service on the

defendant pursuant to the FSIA. Because the Court ultimately concludes that the plaintiff has

properly effected service, the Court need not address the plaintiff's argument regarding whether

email can be used to perfect service on the defendant.

A.      **Whether the Plaintiff Has Properly Served the Defendant Pursuant to the Foreign
        Sovereign Immunities Act**

The FSIA grants district courts original jurisdiction in suits "against a foreign state . . . as

to any claim for relief . . . with respect to which the foreign state is not entitled to immunity[.]"

28 U.S.C. § 1330(a). "Personal jurisdiction over a foreign state shall exist" where the district

court has original jurisdiction under § 1330(a), id. § 1330(b), and where proper service "upon a

foreign state or political subdivision of a foreign state[,]" id. § 1608(a), is in accordance with

§1608(a), see id. § 1330(b).

"The FSIA prescribes four methods for serving legal process on a foreign state, in

descending order of preference—meaning that a plaintiff must attempt service by the first

method (or determine that it is unavailable) before proceeding to the second method, and so on."

Abur v. Republic of Sudan, 437 F. Supp. 2d 166, 172 (D.D.C. 2006) (citing 28 U.S.C.

§ 1608(a)). Here, the plaintiff alleges that it only attempted to comply with the first two methods

of service. Accordingly, the Court will limit its analysis to those two methods. The first method

requires the plaintiff to deliver "a copy of the summons and complaint in accordance with any

special arrangement for service between the plaintiff and the foreign state or political

subdivision[.]"  28 U.S.C. § 1608(a)(1); see Ben-Yishai v. Syrian Arab Republic, 642 F. Supp.

3d 110, 125 (D.D.C. 2022) (explaining that special arrangements for service are "contractual

provisions[] between the plaintiff and the foreign state").

      However, if no special arrangement exists, then the plaintiff may proceed under the

FSIA's second method, which requires the plaintiff to deliver "a copy of the summons and

complaint in accordance with an applicable international convention on service of judicial

documents[.]"  28 U.S.C. § 1608(a)(2); see Abur, 437 F. Supp. 2d at 172 (stating that if the first

FSIA service method is unavailable and "no such arrangement exists, then the statute permits

delivery of the summons and complaint 'in accordance with an applicable international

convention on service of judicial documents'" (quoting 28 U.S.C. § 1608(a)(2))).  The Hague

Service Convention is "an international agreement among the signatory sovereign states on

service of judicial documents[,]" Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic

of Venez., 23 F.4th 1036, 1038 (D.C. Cir. 2022), cert. denied, 143 S. Ct. 113 (2022)—which is

an "applicable international convention" under the FSIA's second method of service, 28 U.S.C.

§ 1608(a)(2)—that permits parties to effectuate process on their counterparts in another signatory

state through its designated "Central Authority [that] receives [ ] request[s] for service . . . [and]

serve[s] the documents" upon the opposing party, Saint-Gobain Performance Plastics Eur., 23

F.4th at 1039; see Hague Convention on the Service Abroad of Judicial and Extra-Judicial

Documents in Civil or Commercial Matters ("Hague Service Convention"), Nov. 15, 1965, 20

U.S.T. 361.

      The Court will first address whether the defendant qualifies as a foreign state under the

FSIA.  Concluding that it does for the reasons set forth below, the Court will then consider

whether the plaintiff has properly effected service pursuant to the FSIA's first two methods for
effecting service of process.

### 1.  Whether the Defendant Qualifies as a Foreign State under the FSIA

The Court first considers whether the defendant, Akimat of Atyrau, qualifies as "a
foreign state or political subdivision of a foreign state" under the FSIA.  28 U.S.C. § 1608(a).  In
other words, the Court must determine whether the defendant is considered "the 'foreign state'
itself"—"rather than a separate 'agency or instrumentality' of the state"—and thus "must be
served under [S]ection 1608(a)." Transaero, 30 F.3d at 153.  "To determine whether [the
defendant] is an agency or instrumentality of [Kazakhstan] or, rather, [Kazakhstan] itself, [the
Court] consider[s] whether its 'core functions . . . are governmental or commercial.'" De Csepel
v. Republic of Hungary, 27 F.4th 736, 743 (D.C. Cir. 2022), cert. denied, 143 S. Ct. 630 (2023)
(omission in original) (quoting Transaero, 30 F.3d at 153).  If the defendant's "core functions are
'commercial, the entity is an agency or instrumentality;' [on the other hand,] if [the defendant's]
core functions are 'governmental, it is considered the foreign state itself.'" Id. (quoting Roeder
v. Islamic Republic of Iran, 333 F.3d 228, 234 (D.C. Cir. 2003)).

Here, the plaintiff alleges that the defendant "is a self-governing municipal agency of the
city of Atyrau . . . in the Republic of Kazakhstan," Compl. ¶ 2, and that it "has acted under the
color of right pursuant to the government powers in Kazakhstan" when it engaged in the alleged
misconduct, id. ¶ 3.  More specifically, the plaintiff claims that the defendant "unexpectedly
issued an order of confiscation of [the plaintiff's] land[,] entitled the 'Ordinance on
Commencement of Compulsory Confiscation of Realty from Kazenercom LLC for State Use[.]'"
Id. ¶ 40.[3]  The plaintiff further alleges that "[a]ccording to the Ordinance, [the defendant]

---

[3] Pursuant to the translation of the Ordinance provided by the plaintiff, it is actually entitled "Ordinance of Akimat
of the City of Atyrau . . . on Commencement of Compuls[o]ry Confiscation of Realty for State Use from

justified its actions [of confiscating land allegedly owned by the plaintiff] by [invoking] Article

242 of the Civil Code of the Republic of Kazakshstan, . . . Article 57 of the Act of the Republic

of Kazakhstan 'On Local State Governance and Self-Governance in Republic of Kazakhstan[,]'

and [ ] Article 63 of the Act of the Republic of Kazakhstan 'On State Property[.]'"  Id. ¶ 41.

Finally, the plaintiff alleges that "[t]he [o]rdinance did not provide any compensation for the

confiscated realty asset at all."  Id. ¶ 48.  Instead, "interested parties had to direct their

'negotiations' or inquiries" to the "Building of the City Akimat, . . . City of Atyrau."  Id.

Based on the plaintiff's representations, the Court concludes that the functions of the

defendant are "so closely bound up with the structure of the state that [the defendant] must . . . be

considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of the

state."  Transaero, 30 F.3d at 153.  This conclusion is compelled because the defendant's "core

functions . . . are governmental[,]" rather than "commercial."  De Csepel, 27 F.4th at 743

(omission in original) (internal quotation marks omitted).  Indeed, a private party could not act as

the defendant did here—viz., issue an ordinance pursuant to Kazakhstan's civil code confiscating

private land for state use.  See Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992)

(stating that a foreign government's activities are "sovereign" rather than "commercial" when

they are activities that "cannot be exercised by a private party").  Thus, the defendant "must be

served [in accordance] with [S]ection 1608(a)"—viz., in accordance with the FSIA.  Transaero,

30 F.3d at 153.  Accordingly, the Court next considers whether the plaintiff has properly effected

service pursuant to the FSIA's first two methods of service.

**2. Whether the Plaintiff Effected Service Pursuant to the FSIA's First Method of Service**

---

Kazenercom LLC."  Compl., Ex. A (Translation of the Ordinance of Akimat of the City of Atyrau, filed May 29, 2017) at 1.

First, the plaintiff claims that it attempted to effect service "in full compliance with the statutory requirements of 28 U.S.C. § 1608(a)(1)[,]" Pl.'s Feb. 22, 2018 Resp. at 4—viz., that it attempted to effect service pursuant to the FSIA's first method of service by establishing a special arrangement with the defendant.  See id. (stating that "[the plaintiff], through its local agents, made special arrangements on accepting the request under the Hague Service Convention" and that "[t]hose arrangements were in conformity with 28 U.S.C. § 1608(a)(1)"). More specifically, in response to the Court's February 15, 2018 Order directing the plaintiff to state "whether there exists any special arrangement for service of process . . . , and if so, whether the plaintiff ha[d] made any attempt to effect service pursuant to that arrangement[,]" Order at 2 (Feb. 15, 2018), the plaintiff claimed that it came to a special arrangement after finding that "the Department of Supporting Court Operations . . . had been designated as the Central Authority under [the Hague Service Convention]" and that "[t]he address of that Department is 39 D. Kunaeva Street, Astana, Kazakhstan[,]" Pl.'s Feb. 22, 2018 Resp. at 2.  The plaintiff represents that special arrangements were made when the plaintiff's local agents "had telephonic inquiries, provided oral information and obtained confirmation that [a service] request . . . would be processed and . . . correctly sent to [the Department of Supporting Court Operations'] address[,]" id. at 3, although the plaintiff does not state who its agents spoke to or what contractual provisions were agreed to, see generally id.  Further, the plaintiff states that it spoke with "one of the deputy clerks [of the Supreme Court of Kazakhstan,]" id. at 3–4, at the Department of Supporting Court Operations to confirm that "the special arrangement reached by the local agents of [the plaintiff] was in fact correct[,]" id. at 4.

The Court concludes that the plaintiff has not established that a special arrangement exists with the defendant under the FSIA's first method of service.  The FSIA's first method

requires the plaintiff to deliver "a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision[.]" 28 U.S.C. § 1608(a)(1).  Here, the plaintiff has not shown that it created a special arrangement with the defendant to accomplish service of process, as the plaintiff does not claim to have directly communicated with the defendant for the purpose of establishing contractual arrangements to effect service.  See generally Pl.'s Feb. 22, 2018 Resp.; see Ben-Yishai, 642 F. Supp. 3d at 125 (explaining that special arrangements for service are "contractual provisions[] between the plaintiff and the foreign state").  More specifically, the plaintiff fails to state who its agents "had telephonic inquiries [with] . . . [when allegedly] obtain[ing] the confirmation that [a service request] . . . would be processed and . . . correctly sent to [the Department of Supporting Court Operations'] address[,]" Pl.'s Feb. 22, 2018 Resp. at 3, and it appears that these inquiries were with Kazakhstan's Central Authority, as the plaintiff provided the address for Kazakhstan's Central Authority immediately preceding this claim of a special arrangement, see id. at 2–3.  The plaintiff's inquiries with Kazakhstan's Central Authority could not have established a special arrangement pursuant to 28 U.S.C. § 1608(a)(1) because the Central Authority is not the foreign state defendant with whom the arrangements must be made, see 28 U.S.C. § 1608(a)(1), but rather must be an entity designated by Kazakhstan—in its capacity as a signatory state to the Hague Service Convention—"to receive requests for service coming from other Contracting States[,]" Saint-Gobain Performance Plastics Eur., 23 F.4th at 1038–39; see id. at 1041 ("Viewing the Central Authority as legally equivalent to a sovereign defendant would amend the [Hague Service] Convention[.]"); see also Pl's Feb. 8, 2022 Resp. at 5 ("As stated in the Complaint, Akymat of Atyrau is not in the capital of Kazakhstan; it is a self-governing municipal agency of the City of Atyrau . . . in the Republic of Kazakhstan[.]").  Thus, while the plaintiff's

12

agents may have "had telephonic inquiries, provided oral information[,] and obtained confirmation that [a service] request[] under the Hague Service Convention[] would be processed and would be correctly sent to [the Department of Supporting Court Operations'] address[,]" Pl.'s Feb. 22, 2018 Resp. at 3, those inquires relate to effecting service pursuant to the second FSIA method of service instead of the first. See 28 U.S.C. § 1608(a)(2) (providing that "if no special arrangement exists," a plaintiff can effect service upon a foreign state "by deliver[ing] [ ] a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents"). Accordingly, those communications did not establish a special arrangement between the parties.

The plaintiff does not otherwise identify the existence of any other special arrangements between the parties. See generally Pl.'s Dec. 14, 2017 Resp.; Pl.'s Jan. 16, 2018 Resp.; Pl.'s Feb. 22, 2018 Resp.; Pl.'s Feb. 8, 2022 Resp. And, based on the record before it, the Court independently concludes that there is "no hint of a special arrangement existing between the [defendant] and [the] plaintiff[]." Compare Doe I v. State of Israel, 400 F. Supp. 2d 86, 101 (D.D.C. 2005) (finding that "§ 1608(a)(1) d[id] not apply" where "no hint of a special arrangement exist[ed] between the [ ] defendants and [the] plaintiffs"), with Int'l Rd. Fed'n v. Embassy of the Democratic Republic of the Congo, 131 F. Supp. 2d 248, 251 (D.D.C. 2001) (holding that a special arrangement had been made in accordance with the FSIA's first method of service when a "[s]ublease [a]greement [ ] between [the] plaintiff and [the] defendant contain[ed]" language on how pleadings "shall be delivered" and "provide[d] addresses for notification"). Thus, given that "there is no hint of a special arrangement existing between the [ ] defendant[] and [the] plaintiff[,] . . . § 1608(a)(1) does not apply." Doe I, 400 F. Supp. 2d at 101. Consequently, given that the first method of FSIA service is not available here, the Court will

13

proceed to assess the FSIA's second method of service.  See Abur, 437 F. Supp. 2d at 172

(stating that if the first FSIA service method is unavailable because "no [special] arrangement

exists, then the statute permits delivery of the summons and complaint 'in accordance with an

applicable international convention on service of judicial documents'" (quoting 28 U.S.C. §

1608(a)(2))).

> **3. Whether the Plaintiff Effected Service Pursuant to the FSIA's Second Method of Service**

Next, the plaintiff claims that it effected service pursuant to the FSIA's second method of

service, by delivering the summons and Complaint in accordance with the Hague Service

Convention.  See Pl.'s Jan. 16, 2018 Resp. at 5 ("[The plaintiff] states and confirms that on

January 10, 2018[,] the Hague Service Convention package was dispatched to Kazakhstan's

Central Authority . . . and that the follow-up is now under the control of that judicial body in

Kazakhstan."); Pl.'s Feb. 8, 2022 Resp. at 5 ("[O]n information and belief, those documents were

left in the Directorate without any movement, indefinitely. . . . Therefore, under the laws of the

Republic of Kazakhstan, [the plaintiff] was in a position to proceed with the lawsuit [by serving

the] documents directly on the defendant, which was accomplished on June 22, 2020.").

As noted above, see supra Section III.A, the FSIA's second method to effect service of

process requires the plaintiff to deliver "a copy of the summons and complaint in accordance

with an applicable international convention on service of judicial documents[.]"  28 U.S.C. §

1608(a)(2).  The Hague Service Convention is "an applicable international convention" for

effecting service in Kazakhstan, id., as it is an "international agreement among the signatory

sovereign states on service of judicial documents[,]" Saint-Gobain Performance Plastics Eur., 23

F.4th at 1038, and "Kazakhstan [ ] became a party to the Hague [Service] Convention . . . [by]

sign[ing] the Convention on October 15, 2015, [which] . . . entered in[to] force on June 1, 2016,"

14

Pl.'s Dec. 14, 2017 Resp. at 2; see Hague Convention on the Service Abroad of Judicial and

Extrajudicial Documents in Civil or Commercial Matters, art. 14, Oct. 11, 1969, 20 U.S.T. 361.

While "[t]he 'primary innovation' of the Hague Service Convention—set out in Articles 2–7—is

that it 'requires each state to establish a central authority to receive requests for service of

documents from other countries[,]'" and requires the Central Authority to "serve the documents

or arrange for their service," this "is not [ ] the only method of service approved by the [Hague

Service] Convention."  Water Splash, Inc. v. Menon, 581 U.S. 271, 275 (2017) (quoting

Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698 (1988)).

      "Article 10 [of the Hague Service Convention] allows for service by alternative means

. . . '[p]rovided the State of destination does not object.'"  Koch Mins. Sàrl v. Bolivarian

Republic of Venez., 514 F. Supp. 3d 20, 36 (D.D.C. 2020) (quoting the Hague Service

Convention, art. 10(a) (second alteration in original)); see Doe I, 400 F. Supp. 2d at 103 (citing

Articles 10(b)–(c) of the Hague Service Convention and explaining that it "allows for personal

service only if the receiving nation has not objected").  Article 10(c) of the Hague Service

Convention allows "any person interested in a judicial proceeding to effect service of judicial

documents directly through the judicial officers, officials[,] or other competent persons of the

State of destination."  Hague Service Convention, art. 10(c); see Holland v. Cardem Ins. Co., No.

19-cv-2362 (TSC/GMH), 2020 WL 9439381, at *5 (D.D.C. June 22, 2020) (stating that Article

10(c) of the Hague Service Convention "permits personal service"), report and recommendation

adopted, No. 19-2362 (TSC), Order at 1 (Sept. 2, 2020), ECF No. 20.

      Here, the plaintiff established in 2017 that the defendant could be served "in accordance

with an applicable international convention[,]" 28 U.S.C. § 1608(a)(2), as "Kazakhstan [ ]

became a party to the Hague [Service] Convention . . . [by] sign[ing] the Convention on October

15, 2015, [which] . . . entered in[to] force on June 1, 2016[,]" Pl.'s Dec. 14, 2017 Resp. at 2; see

Hague Service Convention, art. 14.  Then, in 2018, the plaintiff claimed that "its agents[] w[ere]

able to get [ ] information," Pl.'s Jan. 16, 2018 Resp. at 4, that the "Department of Supporting

Court Operations . . . ha[d] been designated as the Central Authority[, which is located at] . . . 39

D. Kunaeva Street, Astana, Kazakhstan[,]" id. at 3, and that upon receiving this information, the

plaintiff sent its pleadings to the Department of Supporting Court Operations on January 10,

2018, see id. at 4.  The plaintiff further clarified that its agents "had telephonic inquiries,

provided oral information[,] and obtained the confirmation that such a request under the Hague

Service Convention[] would be processed and would be correctly sent to that address" prior to

sending the pleadings on January 10, 2018.  Pl.'s Feb. 22, 2018 Resp. at 3.  Finally, the plaintiff

"confirmed" its agents' conclusion that the "Department of [Supporting Court Operations] was

indeed officially appointed to accept and to process requests under the Hague Service

Convention," id. at 4, by speaking to "one of the deputy clerks of the Supreme Court," id. at 3–4.

The plaintiff claims that it made "efforts to proceed through the Central Authority of

Kazakhstan . . . in 2017 and 2018[,]" but eventually learned that the lawsuit "documents were

left [at the Central Authority] without any movement, indefinitely[,]" as the defendant "kept

denying" that the Central Authority "had transferred the lawsuit documents[.]"  Pl.'s Feb. 8,

2022 Resp. at 5.  Accordingly, the plaintiff alleges that because Kazakhstan's Central Authority

did not serve the defendant, and because Kazakhstan did not object to Article 10 of the Hague

Service Convention, the plaintiff could serve "the lawsuit documents directly on the defendant"

"under the laws of the Republic of Kazakhstan," "which was accomplished on June 22, 2020" by

personal service.  Id.  In support of its representation, the plaintiff submitted an affidavit from

Ludmila Rybina ("Rybina"), "a member of the First Kazakh Chamber of legal consultants[,]" id.

16

at 4, stating that a process server, Erkin Katashev, personally "served the documents on [the

d]efendant[,]" id. at 6, "on June 22, 2020," id. at 5. See id., Ex. 1 (Rybina Affidavit) at 1.

Rybina's affidavit further provided that the "[d]efendant[,] Akimat of Atyrau[,] accepted [the]

lawsuit documents . . . [, which is proven by a] stamp on the receipt of documents . . . [and] the

signature of the authorized official of the [d]efendant agency[.]" Id., Ex. 1 (Rybina Affidavit)

¶ 4; see also id., Ex. 1 (Rybina Affidavit) at 7 (listing the following documents delivered to the

defendant: (1) "[t]he Complaint in English," (2) its "[t]ranslation into Russian," and (3) a

"[r]equest under the [Hague Service Convention,]" which includes a stamp that is signed by the

defendant agency and dated June 22, 2020).

Based on what has been outlined above, the Court concludes that the plaintiff properly

effected service under the FSIA's second method of service. More specifically, the plaintiff was

able to properly effect service by personally serving the defendant pursuant to Article 10(c) of

the Hague Service Convention. Hague Service Convention, art. 10(c). As the plaintiff correctly

notes, Kazakhstan "left the door open [for the plaintiff] to us[e] any of the methods described" in

Article 10, Pl.'s Feb. 8, 2022 Resp. at 4, by not objecting to Article 10 when it became a

signatory to the Hague Service Convention, see id. at 3 (citing Kazakhstan's Central Authority

and Practical Information to the Hague Service Convention, in which the signatory state

expresses "no opposition" to Article 10(c), available at

https://www.hcch.net/en/states/authorities/details3/?aid=1155 (last updated February 27, 2023));

see Koch Mins. Sàrl, 514 F. Supp. 3d at 36 (explaining that Article 10 is an available means of

effecting service if the State of destination has not objected to it); cf. Doe I, 400 F. Supp. 2d at

103 (finding that personal service could not satisfy the Hague Service Convention in that case

because "Israel explicitly stated that, with respect to Articles 10(b) and 10(c) of the Convention,

it would only effect service through the Directorate of Courts" when it ratified the Hague Service Convention).

Accordingly, pursuant to Article 10(c)—which allows for "any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials[,] or other competent persons of the State of destination[,]" Hague Service Convention, art. 10(c)—the plaintiff's counsel contacted a Kazakh legal consultant, Ludmila Alekseevna Rybina, to arrange for personal service upon the defendant, which it represents "was accomplished on June 22, 2020[,]" Pl.'s Feb. 8, 2022 Resp. at 5, by a process server, Erkin Katashev, see id. at 6.  See Holland, 2020 WL 9439381, at *5 (finding that the plaintiff's counsel is a "person interested in a judicial proceeding" and a process server is considered a "competent person[] of the State of destination" (quoting Hague Service Convention, art. 10(c))).  Indeed, Rybina's affidavit asserts that "Erkin Katashev" "served the documents on [the d]efendant" and that the "defendant[,] Akimat of Atyrau[,] accepted [the] lawsuit documents . . . [which is proven by a] stamp on the receipt of documents . . . [and] the signature of the authorized official of the [d]efendant agency[.]"  Pl.'s Feb. 8, 2022 Resp., Ex. 1 (Affidavit) ¶ 4; see id., Ex. 1 (Rybina Affidavit) at 7 (listing, as noted earlier, the following documents delivered upon the defendant: (1) "[t]he Complaint in English," (2) its "[t]ranslation into Russian," and (3) a "[r]equest under the Hague Service Convention[,]" which includes a stamp that is signed by the defendant agency and dated June 22, 2020).  Therefore, given that the plaintiff was able to properly effect service by personally serving the defendant pursuant to Article 10(c) of the Hague Service Convention, the plaintiff has complied with the FSIA's second method of effecting service. See 28 U.S.C. § 1608(a)(2).

18

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff has properly served the defendant pursuant to the Foreign Sovereign Immunities Act.[4]

**SO ORDERED** this 25th day of July, 2024.[5]

REGGIE B. WALTON
United States District Judge

---

[4] Nothing in this opinion should be construed as limiting the defendant's ability to assert jurisdictional defenses at a later time—e.g., the affirmative defense of sovereign immunity.  However, "[i]n accordance with the restrictive view of sovereign immunity reflected in the FSIA, . . . the foreign-state defendant bears the burden of establishing the affirmative defense of immunity."  EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A., 894 F.3d 339, 344–45 (D.C. Cir. 2018).  Therefore, the Court sees no need to address the issue of sovereign immunity at this time.

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.