**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HRF TRADE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AKIMAT OF ATYRAU, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. 17-1019 (RBW)

**MEMORANDUM OPINION**

The plaintiff, HRF Trade Inc., brings this civil action against the defendant, Akimat of

Atyrau, "assert[ing] [a] claim for the required just compensation upon the confiscation overseas

of the assets invested by [the plaintiff] in Kazakhstan, in violation of [ ] international law[.]"

Complaint ("Compl.") at 1, ECF No. 1.  Currently pending before the Court is the plaintiff's

motion for a default judgment.  See Notice of Motion of Plaintiff HRF Trade Inc. for Judgment

by Default Against Defendant Akimat of Atyrau City ("Pl.'s Mot.") at 1, ECF No. 19.  After

carefully considering all of the relevant submissions by the plaintiff,[1] the Court concludes for the

following reasons that it must deny without prejudice the plaintiff's motion.

**I.  BACKGROUND**

The Court outlined some of the factual and procedural background of this case in its

earlier Memorandum Opinion issued on July 25, 2024.  See HRF Trade Inc. v. Akimat of Atyrau

("HRF Trade I"), Civil Action No. 17-1019, 2024 WL 3534654 at *1–2 (D.D.C. July 25, 2024)

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its
decision: (1) Request to Clerk to Enter Default Against Defendant Akimat of Atyrau City, ECF No. 15; and (2)
Response of Plaintiff HRF Trade Inc. to Order of Court on September 10, 2024 in Connection with Clerk's Entry of
Default Against Defendant Akimat of Atyrau City ("Pl.'s Sept. 22, 2024, Resp."), ECF No. 18.

(Walton, J.).  Therefore, the Court will only include here what is relevant to its decision regarding the plaintiff's pending motion for a default judgment.

A.    **Factual Background**

"In February of 2005, Kazenercom LLC (Kazen), a company registered in Kazakhstan acquired a plot of land [identified as land plot] 04-055-017-446.  That plot is located in the central part of Atyrau . . . .  Upon acquisition, Kazen started to seek American investments in order to undertake improvements[.]"  Compl. ¶ 21.  The plaintiff explains that "[a]t that time, the financing came from Maxioil, whose rights . . . were subsequently taken over by [the plaintiff]."  Id.  Subsequently, "on December 8, 2022, [the defendant[2]] issued a decision to use a plot of land [that] had an overlapping with the plot of land owned by Kazen[.]"  Id. ¶ 24.  The defendant then "started a construction project on the land held by Kazen . . . [d]espite a barrage of complaints from Kazen."  Id. ¶ 25.  The plaintiff further alleges that "the construction by [the defendant] was illegal, because no court had confirmed the [defendant's] decision . . . to use that land[.]"  Id.  In 2013, as the contested construction project came to completion, the defendant "brought a suit in the local court in the City of Atyrau and obtained a confirmation of the confiscation of the land" and sold apartments in the building it had erected on the land.  Id. ¶ 27 (footnote added).  The plaintiff claims that the defendant never reimbursed Kazen or its investors, including the plaintiff, for its confiscation of the land, in violation of the Kazakhstan Bilateral Investment Treaty with the United States.[3]  Id. ¶ 28.  The plaintiff further alleges that Kazen acquired a

---

[2] The plaintiff describes the defendant as "a self-governing municipal agency of the city of Atyrau . . . in the Republic of Kazakhstan[.]"  Compl. ¶ 2.

[3] While the plaintiff does not explicitly quote this treaty, it appears to the Court that potentially relevant language can be found in Article III of the treaty: "Investments shall not be expropriated or nationalized either directly or indirectly through measures tantamount to expropriation or nationalization ('expropriation') except: for public purpose; in a nondiscriminatory manner; upon payment of prompt, adequate and effective compensation; and in

(continued . . .)

second plot of land in 2007, identified as land plot 04-066-046-1158.  See id. ¶ 30.  Allegedly,

"the title to the land was not fully transferred to the private owners, but was transferred under the

guise of an unrestricted lease with use rights[.]"  Id. ¶ 32.  Similar to the first plot of land, the

plaintiff explains that "[s]ince the acquisition in 2009, American investors, through Kazen,

undertook various improvements on the land[.]"  Id. ¶ 33.  Then, the plaintiff alleges, "[w]ithout

asking [the plaintiff], in or about 2014[–]2016, [the defendant] caused improvements on that plot

of land."  Id. ¶ 38.  The plaintiff claims that, on February 17, 2017, the defendant "unexpectedly

issued an order of confiscation of that land, entitled the 'Ordinance on Commencement of

Compulsory Confiscation of Realty from Kazenercom LLC for State Use.'"  Id. ¶ 40; see id.,

Exhibit ("Ex.") A (Ordinance on Commencement of Compulsory Confiscation of Realty from

Kazenercom LLC for State Use) at 22–23, ECF No. 1.  According to the plaintiff, neither Kazen

nor its American investors were reimbursed for the defendant's confiscation of the second plot of

land.  See Compl. ¶ 48–60.  At bottom, the plaintiff alleges that "[a]s it appears, it was the

intention of [the defendant] at all times, first to attract investments and then to expunge foreign

investors one way or another."  Id. ¶ 36.

### B.    Procedural Background

The plaintiff filed its Complaint on May 29, 2017.  In its Complaint, the plaintiff asserts

that this Court has personal jurisdiction to hear its claims against the defendant pursuant to the

Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330.  See Compl. ¶ 3.  However,

---

(. . . continued)

accordance with due process of law and the general principles of treatment provided for in Article II(2).
Compensation shall be equivalent to the fair market value of the expropriated investment immediately before the
expropriatory action was taken or became known, whichever is earlier; be calculated in a freely usable currency on
the basis of the prevailing market rate of exchange at that time; be paid without delay; include interest at a
commercially reasonable rate from the date of expropriation; be fully realizable; and be freely transferable."  Treaty
Concerning the Reciprocal Encouragement and Protection of Investment, U.S.-Kazakhstan, May 19, 1992, 103.12
U.S.T. 1, Art. III ("Bilateral Investment Treaty").

because the record in this case did not initially contain any indication that the defendant had been properly served with a summons and the Complaint pursuant to Federal Rule of Civil Procedure 4, the Court ordered the plaintiff to "either submit proof that the defendant ha[d] been properly served or submit to the Court a statement showing good cause for its delay in serving the defendant and its estimation of when proper service upon the defendant w[ould] be achieved." Order at 1 (Nov. 30, 2017), ECF No. 4; see also Order at 1 (Jan. 4, 2018), ECF No. 6; Order at 1 (Feb. 15, 2018), ECF No. 8; Order at 1 (Jan. 10, 2022), ECF No. 10. The plaintiff subsequently filed multiple submissions responding to the Court's Show Cause Orders. On July 25, 2024, the Court issued a Memorandum Opinion in which it concluded that the plaintiff had properly served the defendant, pursuant to the FSIA. See generally HRF Trade I, 2024 WL 3534654.

Since the Court issued its July 25, 2024, Memorandum Opinion, the plaintiff filed its request for the Clerk of the Court to enter a default against the defendant pursuant to Federal Rule of Civil Procedure 55 on August 26, 2024. See Request to Clerk to Enter Default Against Defendant Akimat of Atyrau City at 1. The Clerk of the Court then entered a default against the defendant, Akimat of Atyrau, on August 27, 2024. See Entry of Default at 1, ECF No. 16. On September 10, 2024, the Court issued an Order directing the plaintiff to advise the Court as to whether it would seek the entry of a default judgment against the defendant. See Order at 1 (Sept. 10, 2024), ECF No. 17. The plaintiff filed a timely response on September 22, 2024, in which it stated that "it intend[ed] to seek the entry of a default judgment against the defendant." Pl.'s Sept. 22, 2024, Resp. at 1 (internal quotation marks omitted). Consequently, on October 21, 2024, the plaintiff filed the motion for default judgment that is presently pending before the Court and is the subject of this Memorandum Opinion. See Pl.'s Mot. at 1.

## II.  STANDARD OF REVIEW

Rule 55 sets forth a two-step process for a party seeking a default judgment.  Fed. R. Civ.

P. 55.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed

to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must

enter the party's default."  Fed. R. Civ. P. 55(a).  Second, "the party must apply to the court for a

default judgment."  Fed. R. Civ. P. 55(b)(2).  However, despite a plaintiff's ability to acquire a

judgment by default, there are "strong policies favoring the resolution of genuine disputes on

their merits[.]"  Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980); see Peak v. District of

Columbia, 236 F.R.D. 13, 15 (D.D.C. 2006) (acknowledging the inherent unfairness of awarding

judgment against a party for mere filing delays).  Therefore, a "default judgment must normally

be viewed as available only when the adversary process has been halted because of an essentially

unresponsive party."  Jackson, 636 F.2d at 836 (quoting H. F. Livermore Corp. v.

Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam)); see also

Teamsters Local 639–Emp'rs Health Tr. v. Boiler & Furnace Cleaners, Inc., 571 F. Supp. 2d

101, 107 (D.D.C. 2008) (Walton, J.) (citation omitted) ("[W]hen the adversary process has been

halted because of an essentially unresponsive party[,] the diligent party must be protected lest he

be faced with interminable delay and continued uncertainty as to his rights.").

A "[d]efault establishes the defaulting party's liability for the well-pleaded allegations of

the complaint."  Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011)

(citing Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)); see also Adkins, 180 F. Supp.

2d at 17 ("A defaulting defendant is deemed to admit every well-pleaded allegation in the

complaint.").  "After establishing liability, the [C]ourt must make an independent evaluation of

the damages to be awarded and [it] has 'considerable latitude in determining the amount of

damages.'"  Ventura v. L.A. Howard Constr. Co., 134 F. Supp. 3d 99, 103 (D.D.C. 2015)

(quoting Boland, 763 F. Supp. 2d at 67).  However, the Court must "ensure[] that there [i]s a

basis for the damages specified in the default judgment."  Id. (second alteration in original)

(quoting Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111

(2d Cir. 1997)) (internal quotation marks omitted).  And "'the plaintiff must prove its entitlement

to the amount of monetary damages requested' using 'detailed affidavits or documentary

evidence' on which the court may rely."  Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36

(D.D.C. 2014) (quoting Fanning v. Permanent Sol. Indus., 257 F.R.D. 4, 7 (D.D.C. 2009)).

　　　Under the FSIA, to prevail on a motion for a default judgment against a foreign

sovereign, the plaintiff must show that the Court has original jurisdiction over the claims and

personal jurisdiction over the defendant, see 28 U.S.C. § 1330(a)–(b), and the plaintiff must

"establish[] his[, her, or its] claim or right to relief by evidence satisfactory to the [C]ourt[,]" id.

§ 1608(e); see also Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 74–75 (D.D.C.

2017) (discussing default judgments under the FSIA).  A plaintiff can present this information

through "traditional forms of evidence[, e.g.,] testimony and documentation[,]" Estate of Botvin

v. Islamic Republic of Iran, 873 F. Supp. 2d 232, 236 (D.D.C. 2012), and a plaintiff can also

submit evidence "in the form of affidavits or declarations[,]" Belkin v. Islamic Republic of Iran,

667 F. Supp. 2d 8, 20 (D.D.C. 2009).  However, "[t]he Court is not required to hold an

evidentiary hearing[.]"  Estate of Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1, 7 (D.D.C.

2011); see also Han Kim v. Democratic People's Republic of Korea, 774 F.3d 1044, 1050–51

(D.C. Cir. 2014) (relying on declarations in reversing and remanding for the district court to

enter a default judgment without an evidentiary hearing).  "Upon evaluation, the Court may

accept any uncontroverted evidence presented by plaintiffs as true."  Belkin, 667 F. Supp. 2d at

20 (citing Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229, 255 (D.D.C. 2006)).

## III. ANALYSIS

Given that there are "strong policies favoring the resolution of genuine disputes on their

merits[,]" Jackson, 636 F.2d 831, and that the Court must "ensure[] that there [i]s a basis for the

damages specified in the default judgment[,]" Ventura, 134 F. Supp. 3d at 99, the Court

concludes that it cannot grant the plaintiff's motion for a default judgment under the relevant

standard.  As the Court noted above, "the plaintiff must prove its entitlement to the amount of

monetary damages requested using detailed affidavits or documentary evidence on which the

court may rely."  Boland, 304 F.R.D. at 31 (internal quotation marks omitted).  For the reasons

set forth below, the Court concludes that the plaintiff has not met this burden.  Moreover, a

plaintiff cannot prevail on a motion for default judgment against a foreign sovereign under the

FSIA unless it can demonstrate that the Court has original jurisdiction over the claims and

personal jurisdiction over the defendant, see 28 U.S.C. § 1330(a)–(b); a plaintiff also cannot

prevail without first "establish[ing] [its] claim or right to relief by evidence satisfactory to the

[C]ourt[,]" id. § 1608(e).  After careful review of the plaintiff's filings, the Court concludes that

the plaintiff has not met either of these two requirements under the FSIA.

The plaintiff asserts that it is entitled to a default judgment because, "[a]s the record

shows, [the defendant] has been lawfully served process in this matter but has not appeared to

defend itself . . . . [Moreover, in its] Complaint[, the plaintiff] alleged that [the defendant] is

liable to the plaintiff for $1,378,410 . . . [, because t]he assets that were confiscated

[by the defendant] were valued at $1,378,410."  Pl.'s Mot. at 1.

Here, the Clerk has already entered a default against the defendant in this case pursuant to Rule 55(a).  See Entry of Default at 1.  However, "[t]he fact that the Clerk of Court has entered a default against [the defendant] does not end the Court's inquiry."  Myeress v. ProAm Dance Team NYC LLC, No. CV 18-0109 (PLF), 2019 WL 1011336, at *3 (D.D.C. Mar. 4, 2019).  Rather, the Court "must determine whether entry of [a] default judgment is appropriate and, if it is, whether [the plaintiff] is entitled to the full amount of relief [it] requests."  Ventura, 134 F. Supp. 3d at 103.

For the following reasons, the Court concludes that it must deny the plaintiff's motion without prejudice because the plaintiff has failed to provide adequate evidence in support of its motion for a default judgment as to either liability or damages.  See Boland, 304 F.R.D. at 36 ("[T]he plaintiff must prove its entitlement to the amount of monetary damages requested using detailed affidavits or documentary evidence on which the court may rely.") (internal citation and quotation marks omitted).  Having reached these conclusions, the Court notes several points for clarification, should the plaintiff wish to renew its motion at a later date.

In its motion, the plaintiff requests "compensation for the arbitrary confiscation of assets by Akimat, created due to American investments through HRF and otherwise, without just compensation . . . . Namely, the [p]laintiff[] [has] pleaded for a judgment and order to the defendant to refund and repay all investments made for the assets in Kazakhstan, including the fair market value of goods and services provided, for the amount of $1,378,410."  Pl.'s Mot., Memorandum of Plaintiff HRF Trade Inc. in Support Motion of Plaintiff HRF Trade Inc. for Judgment by Default Against Defendant Akimat of Atyrau City ("Pl.'s Mem.") at 13, ECF No. 19-1.  In support of this request, the plaintiff submitted a Declaration from Erkin Bektay, "a director of Kazenercom LLC (Kazen), a company registered in Kazakhstan since its

registration," which acquired the plots of land at issue in this case and obtained investments from American entities to develop and improve those plots of land.  Pl.'s Mot., Declaration of Erkin Bektay in Support of the Motion for Judgment by Default at 2, ECF No. 19-2.  The plaintiff also submitted the following exhibits: (1) an application for an identification document regarding one of the plots of land—presumably the plot of land identified as 04-066-046-1158—for "submi[ssion] to the Atyrau City Land Relations Department for approval," see Pl.'s Mot., Ex. 1 (Application) at 2–3, ECF No. 19-3; (2) an approval by the City Land Relations Department "[o]n determining the value of the land plot" numbered 04-066-046-1158, see Pl.'s Mot., Ex. 2 (Approved by Head of the City Land Relations Department K. Shaltanov) at 6–7, ECF No. 19-3; (3) the identical application as the one filed as Exhibit 1, see Pl.'s Mot., Ex. 3 (Application Copy) at 10–11, ECF No. 19-3; (4) a December 10, 2013, document regarding "Debt Repayment to BTA Bank" submitted "[t]o Private Judicial Officer" in the "Republic of Kazakhstan" in "Lawsuit No. 1," see Pl.'s Mot., Ex. 4 (Debt Repayment Document) at 14–15, ECF No. 19-3; (5) an "application from LLP 'KAZENERCOM' regarding the change in the functional designation from farming to the division of this settlement into garden plots for further consideration," see Pl.'s Mot., Ex. 5 (Application for Change in Functional Designation) at 18–19, ECF No. 19-3; (6) correspondence regarding "[d]ebt [r]estructuring of BTA Bank before the [c]reditor," see Pl.'s Mot., Ex. 6 (Debt Restructuring of BTA Bank before the Creditor) at 22–25, ECF No. 19-3; (7) what appears to be a legal document concerning "the establishment of basic rates of payment for land plots, with the exception of land plots agricultural appointments when they are transferred to private ownership," see Pl.'s Mot., Ex. 7 (Information and Legal System Regulatory Legal Acts Republic of Kazakhstan) at 28–31, ECF No. 19-3; (8) a document from Master Real Estate that appears, according to information on the sixth page of the plaintiff's

memorandum in support of its motion for a default judgment, to state the monetary value of the land plot numbered 04-055-017-446, <u>see</u> Pl.'s Mot., Ex. 8 (Master Real Estate Document) at 34–36, ECF No. 19-3; and (9) an affidavit from Ludmila Alekseevna Rybina, a "member of the First Kazakh Chamber of [J]uridical [C]onsultants of the City of Almaty, [in] the Republic of Kazakhstan," <u>see</u> Pl.'s Mot., Ex. 9 (Affidavit of Ludmila Rybina) at 1–7, ECF No. 19-4.  Upon consideration of the plaintiff's submissions, the Court concludes for the following multiple reasons that it lacks sufficient information to resolve both the liability and damages components of the plaintiff's motion.

First, the plaintiff requests the repayment of "all investments made for the assets in Kazakhstan, including the fair market value of goods and services provided, for the amount of $1,378,410." Pl.'s Mem. at 13.  However, the plaintiff does not provide any evidence of its investment agreement with Kazen.  The Court therefore lacks clarity as to whether such a contract, or any record of the plaintiff's alleged investments, exists.  Without that information, or an explanation of why the information is unavailable, the Court cannot ensure that the plaintiff has any connection to the alleged actions by the defendant and cannot determine liability or appropriate damages based on the evidence presented.

Second, the plaintiff was a single American investor among what seemingly were multiple American investors associated with each plot of land acquired by Kazen.  The plaintiff's filings do not make clear to the Court how much the plaintiff itself invested into each plot of land, as opposed to Kazen or any other American investors.  In order to determine liability and the amount of damages to which the plaintiff is entitled, if any, the Court would need documentation establishing the investments made by HRF Trade, specifically, as to each plot of

land, as well as the value, in United States Dollars, of those investments at the time they were made and currently, respectively.

Third, to the extent the plaintiff seeks to rely on the Bilateral Investment Treaty between Kazakhstan and the United States in bringing its claim against the defendant under the FSIA, the plaintiff has not provided any legal authority for its position that the treaty gives the court jurisdiction over its claims.  In its prior Memorandum Opinion, the Court concluded that the defendant qualifies as a foreign state under the FSIA.  See HRF Trade I, 2024 WL 3534654, at *5 ("The Court will first address whether the defendant qualifies as a foreign state under the FSIA. Concluding that it does for the reasons set forth below, the Court will then consider whether the plaintiff has properly effected service pursuant to the FSIA's first two methods for effecting service of process.").  Therefore, the Court lacks personal jurisdiction over the defendant absent an applicable exception to the FSIA.  See 28 U.S.C. § 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."); see also Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434–35, 443 (1989) (citing Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493 (1983)).  If the plaintiff claims that the aforementioned treaty creates a carve-out to the FSIA that provides for the Court's jurisdiction, it must provide legal authority supporting that position.[4]

---

[4] The Court also notes the conclusion reached in S.K. Innovation, Inc. v. Finpol, 854 F. Supp. 2d 99 (D.D.C. 2012), that, in that case, the Bilateral Investment Treaty between Kazakhstan and the United States did not constitute a waiver of Kazakhstan's sovereign immunity under the FSIA over claims of wrongful expropriation.  The plaintiff here neither addresses nor distinguishes this case from S.K. Innovation, Inc. in its filings.  Therefore, in order to provide the plaintiff an opportunity to address the effect of S.K. Innovation, Inc. on the resolution of this matter, the Court will deny the plaintiff's pending motion for default judgment without prejudice and permit the plaintiff to file a renewed motion for a default judgment that addresses this authority, if it chooses to do so.

Fourth, while it appears that the plaintiff provided one official appraisal for the plot of land identified as 04-066-046-1158, see Pl.'s Mot., Ex. 2 (Approved by Head of the City Land Relations Department K. Shaltanov) at 6–7, ECF No. 19-3, the plaintiff has not filed any such appraisal for the other plot of land in question.  The Court cannot take as true any of the plaintiff's assertions regarding the value of land plot 04-055-017-446 without evidence of an appraisal, or supplemental documentation to that effect along with an explanation of why official appraisal information is unavailable.

Fifth, the plaintiff alleges that "[i]n light of the basics of the law, all improvements on [land plot 04-055-017-446, which was] owned by Kazen, even without its permission or adjudication by the court of the land ownership, were to be counted towards the value of its property."  Pl.'s Mem. at 9.  However, the Court is unclear as to which "law" the plaintiff refers. In order for the Court to consider the improvements on land plot 04-055-017-446 by the defendant in its assessment of liability and damages, the plaintiff would need clarification of what legal authority applies and why.

Sixth, the plaintiff describes Kazen's acquisition of the second plot of land—plot number 04-066-046-1158—as follows: "the title to the land was not fully transferred to the private owners, but was transferred under the guise of an unrestricted lease with use rights, which is interpreted as a guarantee for at least 99 years."  Id. at 8.  The Court appreciates the plaintiff's allegation that the Bilateral Investment Treaty between the United States and Kazakhstan was intended to promote American investment into Kazakhstan, as opposed to direct land ownership in Kazakhstan by Americans, and the plaintiff alleges that it invested funds into Kazen's projects on this plot of land.  Nonetheless, the Court lacks clarity as to the applicability and effect of this lease on the defendant's liability, because the plaintiff has provided no legal authority supporting

its position that such a lease is, in fact, "interpreted" in this manner.  Thus, without providing the

Court with more information, the plaintiff has not met its burden to establish damages.  See

Ventura, 134 F. Supp. 3d at 103 ("After establishing liability, the court must make an

independent evaluation of the damages to be awarded . . . [and] ensure[ ] that there [i]s a basis

for the damages specified in the default judgment . . . .  To ensure that there is an adequate basis

to determine damages, a plaintiff must prove [his] entitlement to the relief requested[.]")

(internal citations omitted) (third and fourth alterations in original).

   Seventh, the plaintiff makes certain representations about land values but does not

provide information regarding exchange rates between United States Dollars and Kazakhstani

Tenges ("Tenges"); nor does the plaintiff provide explicit information about how those exchange

rates varied depending on the investment dates in question.  Moreover, some of the alleged land

values are provided in both United States Dollars and Tenges, while others are solely provided in

United States Dollars.  For example, the plaintiff alleges that "[i]n November [of] 2009, the

official appraisal entity undertook an appraisal of [land plot number 04-066-046-1158].

According to its appraisal, the land's worth was 169 million [T]enges, or approximately

$1,100,000 at the time."  Id.  However, elsewhere in the Complaint, the plaintiff alleges that

"[w]ithout asking HRF, in or about 2014[–]2016, Akimat caused improvements on that plot of

land.  That included conducting electricity transmission line over that land, with the value of

$120,000."  Id. at 11.  It is not clear to the Court why certain sums are presented in both

currencies and others are only presented in one.  The Court cannot make a determination as to

liability and damages in this case without all available information as to how the plaintiff's

alleged amounts in United States Dollars were calculated.  The plaintiff also does not explain the

source of its per-square-foot calculation for the properties in question.  Some filings appear to

provide general per-square-foot rates based on the neighborhood in which a given land plot is

located, see, e.g., Pl.'s Mot., Ex. 7 (Information and Legal System Regulatory Legal Acts

Republic of Kazakhstan) at 28–31, ECF No. 19-3, without, for example, providing any

explanation of whether the land plots in question are located within any of the specified

neighborhoods on those charts or how the relevant conversion rates, dates, and other factors

might have affected those values.  In short, the calculations and conversion rates provided by the

plaintiff are unclear, especially given how much time has elapsed since the plaintiff allegedly

invested in each of the land plots at issue, and there is no indication as to the current fair market

value of those land plots.  After nearly two decades since the plaintiff's alleged investments, the

land values and conversion rates applicable today have very likely changed.  Thus, the Court

cannot conduct its default judgment damages analysis based upon the current information the

plaintiff has provided. See Ventura, 134 F. Supp. 3d at 103.

     Finally, the plaintiff asserts that it is entitled to damages of $1,378,410, and represents

that it reached this number using "advanced computation methods to determine the value of

property rights[,]" Pl.'s Mot. at 1; however, the Court is unclear as to how the plaintiff reached

this number.  Without a more detailed explanation from the plaintiff of the details that are the

basis for this calculation, the Court cannot determine what, if any, award of damages is

warranted.  See Ventura, 134 F. Supp. 3d at 103.

### IV. CONCLUSION

     For the foregoing reasons, the Court concludes that it must deny without prejudice the

plaintiff's motion for a default judgment against the defendant.

**SO ORDERED** this 28th day of March, 2025.[5]

REGGIE B. WALTON
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.